RHODES & SYMES v. NADESKI

(December 10, 1928. Opinion and Decree.)

F. C. Johnson, Jr., and Guion and Upton, of New Orleans, attorneys for plaintiffs and appellants.

J. J. Landry, of New Orleans, attorney for defendant and appellee.

JONES, J. Plaintiffs, real estate agents, sued on December 1, 1927, for a commission of $225.00, alleging that defendant is indebted to them in this sum because he had breached a contract of sale of six lots of ground made on October 1, 1925. Defendant answered, admitting signing the acceptance, but denying all indebtedness, and averring that no demand had been made for more than a year after the contract was signed, and that he had never been put in default. He further alleged that the purchaser had abandoned the contract and had never been able or willing to comply with it.

The trial judge decided in favor of defendant, but granted a new trial on motion of plaintiffs averring that they had discovered new evidence, showing that demands had been made on the defendant and a deed to the property had been tendered. The second trial resulted in a like judgment for defendant and plaintiffs have appealed to this court.

The pertinent parts of the contract read as follows:

"CONTRACT TO PURCHASE
"New Orleans, La., Oct. 1, 1925.
"RHODES & SYMES,
"Real Estate Agents.
"I hereby offer and agree to purchase through you, Rhodes & Symes, for the sum and price of $4,500.00, the following described property.
\* \* \*
"If this offer is accepted, I will deposit with you immediately in cash 10% of the amount thereof on account of the purchase price, non-interest bearing, this deposit not to be considered as earnest money, the parties hereto reserving the right to demand specific performance.
"If a good and merchantable title can be made to me, I agree to accept title to above property and pay the balance of the purchase price upon passing Act of Sale, which shall be done at my expense before _____, Esq., Notary Public, within_____.
"Should I fail to comply with the terms or conditions of this offer after same is accepted, I obligate myself to pay on demand your commission on this sale, and any Attorney's fees and costs of Court that you may incur in enforcing collection of your claim. This offer remains binding and irrevocable until_____.
"Purchaser's Signature: Dendinger, Inc.,
"By Geo. Dendinger.
"New Orleans, La., Oct. 1, 1925.
"Rhodes & Symes,
"Real Estate Agents.
"I hereby accept the above offer and agree to pay you, Rhodes & Symes, commission of 5% on the above sale.
"Owner's Signature: Frank Nadeski."

On the trial of the case, George Dendinger, testified that he had signed the contract for his company and made at the same time a deposit of $450.00, and had always been willing to go through with the contract; that he had subsequently consulted his attorneys who had advised suit for specific performance, but that the "boom in Lakeview property had busted," and that he had withdrawn his deposit before this suit was filed.

Plaintiff's bookkeeper testified that his books showed that deposit of $450.00 had been made on October 3, 1925, by Dendinger, and credited to defendant, and that it had been withdrawn on November 18, 1927.

Barrios, the then salesman for plaintiffs, who brought about the purported transaction, testified on direct examination that he had known defendant for a long time, and that he had persuaded defendant to sign the contract in blank before the offer had been filled out by telling him that he could get $4,500.00 for the property, and that he then persuaded George Dendinger to fill out and sign the offer on the same

**348**

day, and on the next morning secured the deposit of $450.00.

On cross-examination he states that defendant had signed the acceptance on a blank offer signed by him "Rhodes & Symes, agents;" that he was representing Nadeski at the time, but later represented both parties; speculation was rife in the Lakeview property at the time, and that it was going up by leaps and bounds; that he did not notify defendant until October 15 of the deposit.

Nadeski, the defendant, testified that after signing the blank offer he heard nothing further from the agents, and on October 13 he wrote a letter to plaintiffs reading as follows:

"Rhodes & Symes, Agents, and N. J. Barrios,
"740 Perdido St.,
"City.
'Gentlemen:
"I hereby beg to notify you, that I have withdrawn from the alleged agreement of sale signed by you on October 1, 1925. The reasons for my withdrawal, amongst others, are as follows:
"1st. You had me sign an acceptance of an offer addressed to you as Agents and signed by yourselves as Agents which in reality is no offer at all.
"2nd. There is no certainty in the description sufficient to identify the property.
"3rd. Even if these two reasons were not valid in law the terms of the offer have not been complied with as you have not notified me that the 10% deposit required by the offer has been made. Under the circumstances I consider the offer of no further effect.
"Yours respectfully,
"Frank Nadeski (Signed)."

That on October 15, he had received a letter from plaintiffs reading as follows:

"October 15, 1925.
"Mr. Frank Nadeski,
"2441 Orleans Street,
"New Orleans, La.

"Dear Sir:
"In reference to the sale of lots 27 to 32 inclusive, in square No. 235, fronting on Harrison Avenue, corner of Toulouse Street, we beg to advise that this contract was made and signed by Dendinger, Inc., purchasers, on October 1st, 1925, and accepted by you on the same date, and the said Dendinger, Inc., posted the 10% deposit on October 2nd, according to the agreement of sale.
"This deposit is held by us according to the custom in Real Estate transactions and we are to deduct our 5% brokerage and return the balance at the time of passing the Act of Sale.
"Yours very truly,
"RHODES & SYMES."

That he heard nothing further from plaintiffs until a short time before this suit was filed on December 1, 1927.

The defendant's wife and her sister both testified that they had gone to the office of Rhodes & Symes a few days after October 1st and had been informed that Barrios was no longer employed there, and that they knew nothing about the Nadeski lots, and had no record referring to them.

The above analysis shows that plaintiffs' proof confirms the statement in defendant's letter above quoted, to the effect that he had signed an acceptance addressed to plaintiffs as agents, and signed by them as agents. Apparently, therefore, the so-called offer had no legal validity, and this fact alone suffices to justify the decision of the lower court, for plaintiff could not accept an offer when there was none in existence.

Other valid reasons for affirming the judgment of the lower court are added, as defendant, in his answer, apparently admitted acceptance of this contract, though the proof shows differently.

When plaintiffs allowed Dendinger to withdraw his deposit of $450.00, they vio-

lated that paragraph of the contract quoted above which says that the deposit shall be retained as a part of the purchase price. By this breach of duty, directly imposed upon them by the contract, they rendered specific performance impossible and thereby deprived defendant of a valuable right.

In this case a high degree of trust was necessarily imposed upon the agents, who were acting as the brokers for both parties, and it is incumbent upon them, in order to secure proper compensation for their services, that they shall prove that they measured up to the responsibilities imposed. The law requires that brokers shall furnish a purchaser able and willing to carry out their contracts, and if they allow the purchaser to withdraw his deposit and thereby abandon his contract, the purchaser is no longer willing to perform, and an essential element of recovery is thereby destroyed. This equitable doctrine has been repeatedly upheld by this court.

"A contract between an owner of real estate and a broker, by which the latter is to receive from the former a commission to effect a sale, contemplates an actual sale." McWilliams vs. Lyons, 5 Orl. App. 231.

"A real estate broker does not earn his commission for procuring a sale of the property by obtaining for the owner a mere executory agreement, not specifically enforceable, and from which the prospective purchaser in fact withdraws by forfeiting the 'earnest money' deposited by him." Haight vs. Marrero Land & Improvement Assn., 12 Orl. App. 369.

"Where the proposed purchaser is not ready and willing to buy on the terms thus proposed, and the sale is not made on account of his refusal to take the property, the broker's commissions have not been earned." Loyacano vs. Succ. of Thompson, 4 Orl. App. 345.

For above reasons the judgment is affirmed.