256 S.W.2d 283 (1953)
POLITTE
v.
WALL et ux.
No. 28367.
St. Louis Court of Appeals. Missouri.
March 17, 1953.
Rehearing Denied April 17, 1953.
Thurman & Nixon, J. W. Thurman and Earl R. Blackwell, Hillsboro, Threlkeld & Nixon and Jeremiah Nixon, De Soto, for appellant.
Dearing & Matthes and Will B. Dearing, Hillsboro, Sam McKay, De Soto, W. H. S. O'Brien, Hillsboro, for respondents.
HOUSER, Commissioner.
This is an action to recover a real estate broker's commission alleged to be due for services rendered in procuring a purchaser for a dwelling house owned by defendants.
Plaintiff Leo H. Politte filed his petition in two counts, (1) for the commission and (2) for expenses incurred in connection with attempts to clear the title. The trial below resulted in a jury verdict in favor of defendants on Count I and in favor of plaintiff in the sum of $85.25 on Count II. Plaintiff has appealed from the judgment entered upon the verdict.
The evidence discloses the following state of facts: Defendants, J. E. Wall and wife, *284 agreed in writing to pay plaintiff a commission of 5% if a sale of their property for the sum of $6,000 was made. The contract contained a provision that defendants' "title is perfect, and, in event of sale, general warranty deed will be given." Plaintiff procured a written agreement by Dr. Harold A. Matthews to buy the property for $6,000. Dr. Matthews, who was ready, able and willing to buy the property, deposited $1,000 with plaintiff as earnest money. The earnest money contract provided that if the sale was not closed " * * * on account of the failure of the purchaser to comply with the terms herein, the above mentioned earnest money shall be forfeited to seller and agent * * *." The contract further provided that title to the property was to be perfect and that "If title be found imperfect and seller cannot perfect same in a reasonable time, the above mentioned deposit is to be refunded * * * thereby releasing the purchaser * * *." Subsequently plaintiff informed defendant J. E. Wall that there was a little trouble in clearing the title and that there might be some additional expense. Wall thereupon advised plaintiff to get the title cleared. Plaintiff unsuccessfully sought to do so, incurring expenses in the sum of $85.25 in his efforts. Some time later plaintiff informed J. E. Wall that "the deal was off."
Although it was not a part of the evidence before the trial court, it was admitted in appellant's brief that "When said defect was not removed from the title the purchaser requested of the plaintiff the return of his earnest money deposit. The plaintiff returned the One Thousand Dollars and thereupon requested the defendants to pay to the plaintiff his commission for the sale of said real estate; * * *." That fact therefore may be assumed as true in determining appellant's rights. 4 C.J.S., Appeal and Error, § 1343, p. 1936; State v. Ray, Mo.Sup., 225 S.W. 969; Pate v. Dumbauld, 298 Mo. 435, 250 S.W. 49; In re Kelley's Estate, 213 Mo.App. 492, 255 S.W. 1064; Clark v. St. Louis S. F. R. Co., Mo.App., 4 S.W.2d 843.
On this appeal plaintiff urges that the trial court erred in refusing to direct a verdict for plaintiff on Count I of his petition and erred in giving Instruction No. 2 for defendants.
There was no error in refusing to direct a verdict for plaintiff.
It is a well settled rule that, in the absence of a stipulation to the contrary between the broker and his principal, the former is entitled to his commission if, acting in good faith, he procures a purchaser willing, able and ready to take the property on the terms offered by the principal, although the sale fails because of a defect in the principal's title of which the broker had no notice, Stone v. McConnell, Mo.Sup., 187 S.W. 884; Maddux v. St. Louis Union Trust Co., 186 Mo.App. 138, 171 S.W. 669; Perrin & Shoemaker v. Kimberlin, 110 Mo.App. 661, 85 S.W. 630: Bruce v. Wolfe, 102 Mo.App. 384, 76 S.W. 723; Christensen v. Wooley, 41 Mo.App. 53; Brown v. Smith, 113 Mo.App. 59, 87 S.W. 556; Hart v. Hopson, 52 Mo.App. 177; Reiger & Thompson v. Merrill, 125 Mo.App. 541, 102 S.W. 1072, and notwithstanding that the purchaser refused to carry out the contract. Pratt v. Irwin, Mo.App., 189 S.W. 398; Bird v. Rowell, 180 Mo.App. 421, 167 S.W. 1172. Nothing further appearing, therefore, plaintiff would have been entitled to his commission upon the execution of the earnest money contract. These rules, however, have no application when the broker does not act in good faith with his principal, Williams v. Sodini, Mo.App., 267 S.W. 81, and that is the situation in the case at bar, as we shall see presently.
For the moment let us consider the legal situation following the discovery of the defect in the title. Upon that discovery the sellers were entitled to a reasonable length of time within which to cure the defect. The contract so provided. (Incidentally, time was not stipulated to be of the essence of the contract). A reasonable length of time to cure a title defect contemplates the time it would take to proceed with due diligence to correct the defect, considering the character of the defect and the acts necessary to be performed in order to correct it. Johnson v. *285 Schuchardt, 333 Mo. 781, 63 S.W.2d 17, 89 A.L.R. 914. The defect in the case at bar involved the failure to publish notice to the creditors after the death of one of defendants' predecessors in title. The least possible time within which this defect could be cured would be the space of one year from the date of the first publication of notice of letters of administration. Section 461.440 RSMo 1949, V.A.M.S. There is no question that in the case at bar defendant J. E. Wall proceeded with due diligence to correct the defect. When plaintiff first informed him that there would be trouble and expense in clearing the title, Wall told plaintiff "to go ahead and get the title cleared." Plaintiff thereupon procured title papers, conferred with lawyers and title companies, made long distance telephone calls, trips to Festus and St. Louis, and spent $85.25 in his efforts. Within thirty minutes after plaintiff told Wall that the title could not be cleared, Wall took the papers to a lawyer, employed him to straighten out the title and the lawyer, moving with dispatch, checked the records in the Probate Court, consulted with the Probate Judge, procured an order of publication and publication was made.
After the passage of one year and the proper closing of the estate the title would have been perfected. Thereupon defendants could have tendered a perfect title to the purchaser, who would have been obligated to perform his contract. During this period of time defendants had a continuing interest in the performance of the contract of sale by the purchaser. If after they had perfected and tendered title to the purchaser he had refused to perform, the sellers would have had a number of remedies open to them, 66 C.J., Vendor and Purchaser, § 1069, pp. 1206, 1207, including the right to enforce the forfeiture provisions of the contract of sale and retain the $1,000 earnest money deposit.
Shortly after the title defect was discovered, the purchaser, apparently desiring to abandon the transaction, demanded of plaintiff the return of the $1,000 deposit. In compliance with the duty of a
broker to keep his principal fully informed of all facts pertinent to the transaction, Garner v. Woods, Mo.App., 24 S.W.2d 708, to practice good faith, and exercise the highest fidelity toward and promote the best interests of his principals, Dittmeier v. Missouri Real Estate Commission, Mo. App., 237 S.W.2d 201; Curotto v. Hammack, 362 Mo. 457, 241 S.W.2d 897, 26 A. L.R.2d 1302; Luikart v. Miller, Mo.Sup., 48 S.W.2d 867, it was the duty of the broker to inform defendants of the purchaser's demand. This would have given defendants an opportunity to decide whether the contract should be rescinded and the purchaser released or whether the purchaser should be held to his obligation while defendants proceeded to perfect their title. Plaintiff, however, did not communicate this important information to his principals. Instead he assumed to decide the matter for them, and without informing or consulting with them returned the $1,000 deposit to the purchaser and informed his principals that "the deal was off." Four or five days later plaintiff informed defendant J. E. Wall that his title was not good.
In returning the deposit to the purchaser without the knowledge or consent of the sellers, the broker exceeded his authority. He was employed to sell real estate. It was a limited agency. He had no implied or apparent authority to rescind or abandon a sale. He could not bind his principals beyond the limit of the authority conferred upon him. Fruit Auction Co. v. F. Quattrocchi & Son, Mo.App., 200 S.W. 709.
In so doing, the broker violated his duty under the earnest money contract which obligated him to keep the deposit as part payment of the purchase price, and either pay it over to the seller upon completion of the deal or declaration of a forfeiture, or pay it over to the purchaser only, if and when it was determined by competent authority that an imperfect title could not be perfected within a reasonable length of time. Because of this breach plaintiff cannot recover his commission. Rhodes & Symes v. Nadeski, 9 La.App. 346, 119 So. 292.
*286 In so doing, the broker violated the confidential and fiduciary relationship of broker and customer. Instead of performing his duty to communicate to his principals information of importance to them he took action which made their position in the enforcement of their rights more difficult and burdensome. Instead of protecting their best interests by promoting the consummation of the contract of sale, he took steps which were derogatory and antagonistic to their interests. He countenanced and participated in an attempt to rescind and terminate a contract in which his principals had a continuing interest, and jeopardized the possibility of their eventually enforcing a forfeiture by taking possession of the $1,000 in the event they perfected the title and the purchaser defaulted. He imposed upon them the necessity of filing an action to recover the amount of the deposit should they have elected to enforce the forfeiture.
For breach of duty in these respects plaintiff forfeited his right to the commission. Consequently the court did not err in failing to direct a verdict for plaintiff.
Had there been a complete and incurable failure of title a totally different situation would have presented itself, for in that event the right of the purchaser to take down his deposit would have been absolute and it would have been the duty of the broker to return it. And if the sellers had attempted to repudiate the contract or procure its repudiation by the purchaser an entirely different result would obtain, as illustrated by the cases of Franklin v. Davis, 286 Mass. 202, 190 N.E. 19, and Phelps v. Prusch, 83 Cal. 626, 23 P. 1111. There was no such attempt in the case at bar. On the contrary, the sellers took every conceivable and timely step to cure the defect in the title as soon as they were aware of it.
Since plaintiff could not recover in any event under the admitted facts it would not be profitable to pursue the now academic procedural question as to the propriety of Instruction No. 2.
Although the question whether a broker who has forfeited his commissions by misconduct thereby forfeits his claim for reimbursement for expenses incurred could have been made pertinent to the inquiry, we express no opinion with reference thereto because the point was not raised.
The Commissioner recommends that the judgment of the trial court be affirmed.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and IVAN LEE HOLT, Jr., JJ., concur.