IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 28, 2010

## STATE OF TENNESSEE v. CHARLES REGINALD UNDERWOOD, JR.

**Appeal from the Criminal Court for Sullivan County**
**Nos. S55301, S55302, S55303, S55304     Robert H. Montgomery, Jr., Judge**

---

**No. E2009-02160-CCA-R3-CD - Filed September 14, 2010**

---

The Defendant, Charles Reginald Underwood, Jr., pled guilty to three counts of third offense driving on a revoked or suspended license, a Class A misdemeanor; violation of the seat belt law, a Class C misdemeanor; and speeding, a Class C misdemeanor. See T.C.A. §§ 55-50-504 (Supp. 2009); 55-9-603(2008); 55-8-302 (2008). The Defendant also entered a best interest guily plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to facilitation of a false report of child abuse, a Class A misdemeanor. T.C.A. § 37-1-413 (2005). At the sentencing hearing, the trial court imposed an effective sentence of three years, eleven months, and twenty-five days, to be served on split confinement involving six months of jail service followed by probation conditioned upon community corrections participation. On appeal, the Defendant contends that the trial court erred in imposing confinement and in denying his motion to reduce his sentence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Michael J. LaGuardia, Kingsport, Tennessee (on appeal); and Stephen M. Wallace, District Public Defender, and William Andrew Kennedy, Assistant Public Defender (at trial), for the appellant, Charles Reginald Underwood, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Amber Massengill and Laura Rayment, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

At the guilty plea hearings, the State and the Defendant stipulated to the facts recited in the affidavits of the arresting officers. Neither those affidavits nor their contents were entered as exhibits or read into the record, although the affidavits were quoted in the presentence report. The presentment in case S55,301 alleged that the Defendant drove without a valid license on June 5, 2007, that he had two previous convictions of driving without a valid license, and that he failed to use his seat belt while operating a car. The presentence report states that the presentment in case S55,303 alleged that the Defendant drove without a valid license on October 2, 2007, that he had two previous convictions of driving without a valid license, and that he drove in excess of the speed limit. The presentment in case S55,304 alleged that the Defendant drove without a valid license on January 8, 2008, and that he had two previous convictions of driving without a valid license. The presentence report briefly recited facts from the officers' affidavits which supported the allegations in the presentments.

The indictment in case S55,302 alleged that the Defendant unlawfully, knowingly, and maliciously made a false accusation of child sexual abuse on September 12, 2007. According to the presentence report, a detective's affidavit stated that the Defendant, using a false name, made an allegation of child sexual abuse involving a thirteen-year-old girl and the child's father. The Defendant claimed that the alleged victim had reported the abuse to the Defendant's daughter. The girl's mother was a friend of the Defendant's, and the mother was in litigation with the girl's father over custody of the girl. The man against whom the allegation was made, his wife, and his son all identified the Defendant's voice from a recording. The girl denied that she had been abused or that she had told any of her friends that she had been abused.

The Defendant entered guilty pleas to third offense driving without a valid license, speeding, and failure to wear a seat belt. There was no sentencing agreement. The Defendant later entered a best interest guilty plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), to facilitation of a false report of child sexual abuse, with an agreed sentence of eleven months and twenty-nine days on probation.

The sentencing hearing was held approximately four and one-half months after the Defendant's guilty plea hearing for the motor vehicle offenses. The Defendant testified that since that time, he had been on probation supervision as a condition of his bond. He said that he was employed by a car detailing business, that he was making payments for his bond supervision, and that he was attending his supervision appointments. The Defendant asked the court to place him on probation. He said his father had died earlier in the year and his

mother needed his help. He acknowledged that his record had been bad but said that his father's death had made him a better son and husband.

On cross-examination, the Defendant admitted that his probation for an unrelated case had been revoked after he had a positive drug screen. He acknowledged that he "used to smoke dope." He said that he had driven with a suspended license in order to get to and from work, although he knew that doing so was a crime. He said that his wife, who had a valid driver's license, was now taking him to and from work. He also admitted that he had illegally possessed Schedule III drugs in Scott County, Virginia, in July 2008, and that he had three forgery cases pending in Washington County, Tennessee.

The presentence report reflected that the thirty-five-year-old Defendant had numerous prior convictions dating back to age nineteen. They included convictions for traffic offenses, drug possession, failure to appear, driving without a valid license, vandalism, forgery, and theft. The Defendant had been given several opportunities to serve his sentences on probation, and his probation had been revoked on three previous occasions. He had also been revoked from determinate release in 2006. The presentence report stated that according to the records of the Tennessee Board of Probation and Parole, the Defendant had six positive drug screens between 2001 and 2003.

A letter from the Board of Probation and Parole that was submitted as an exhibit at the hearing stated that the Defendant's two drug screenings in June and July 2009 were negative. The letter also corroborated the Defendant's testimony that he paid his supervision fees and reported as instructed.

The trial court found that the Defendant had "a horrible record, full of violations [and] positive drug screens." The court imposed split confinement of six months in jail, with the Defendant being allowed to apply for work release, and the balance of the sentence on supervised probation conditioned upon participation in the community corrections program. The court found that the Defendant should receive consecutive sentencing for the four Class A misdemeanor convictions because he had an extensive record of criminal activity and an extended sentence was necessary to protect the public from his further criminal conduct.

The Defendant filed a motion to reduce his sentence in which he requested that the court reduce or reconsider the jail service component of his sentence. The court conducted a hearing on the motion two months after the sentencing hearing.

Scott Rogers testified that he was the Defendant's probation officer. He said that the Defendant had been under his supervision for three months and that the Defendant had

satisfied all of the requirements of probation to that date, including reporting, paying fees, and having negative drug screens.

The Defendant testified that before his supervision by Mr. Rogers, he had been on bond supervision from April until July 2009. He said that he met all the requirements of bond supervision during that time. He said he had applied for admission at a technical college and would be able to enroll in January 2010 unless he was in jail. He reiterated his sentencing hearing testimony that his father had passed away recently and that his mother, who was disabled, needed his help maintaining her home and property. The Defendant said he had made bad choices in the past but that he was "taking things a lot more serious[ly] now[.]" He said he had not been able to pay his fines and court costs but that his mother had agreed to loan him approximately $5,000 that was necessary to satisfy these debts. He said he made about $200 a week at his full-time job, that he lived with his wife, and that he assisted his mother financially when he could. He said that he saw his children, whose mother was deceased, every other week and that he provided financial support for them, although they lived with another relative.

After receiving the evidence, the trial court denied the motion. The Defendant appealed.

# I

The Defendant argues that the trial court erred in imposing confinement and in denying his motion to reconsider the sentence. As a preliminary matter, however, the State argues that the appeal should be dismissed because the notice of appeal was untimely.

The trial court filed its judgments on August 24, 2009. The Defendant filed his Motion to Reconsider Sentence on August 25. The court denied the motion on October 12. The Defendant filed his notice of appeal pro se on October 15.

An appeal as of right is initiated by filing a notice of appeal within thirty days of the entry of the judgment being appealed. T.R.A.P. 3(e), 4(a). However, if a timely motion (1) for judgment of acquittal, (2) for new trial, (3) for arrest of judgment, or (4) for a suspended sentence is filed, the thirty days runs from the entry of the order determining such motion or motions. T.R.A.P. 4(c). No other motion, including one for rehearing or for reduction of sentence, is allowed to suspend the running of the time for appeal from the entry of the judgment. See State v. Lock, 839 S.W.2d 436, 440 (Tenn. Crim. App. 1992); State v. Bilbrey, 816 S.W.2d 71, 74-75 (Tenn. Crim. App. 1991). The Defendant's Motion to Reconsider Sentence did not toll the time for filing a notice of appeal.

"A defendant who fails to appeal from the entry of a judgment of conviction, including the sentence, but who elects to appeal after a Rule 35 motion to reduce sentence has been decided, runs the risk of having failed to preserve any issue regarding the validity of the judgment, being left with only those properly raised in the Rule 35 motion." State v. Bilbrey, 826 S.W.2d 71, 75 (Tenn. Crim. App. 1991). However, Rule 4(a) provides that the notice of appeal "is not jurisdictional and the filing of such document may be waived in the interest of justice." T.R.A.P. 4(a). "In determining whether waiver is appropriate, this Court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, Davidson County, slip op. at 2 (Tenn. Crim. App. Dec. 27, 2005). The Defendant has stated the issues in his appeal clearly and has filed for our review a record of both the sentencing hearing and the Motion for Reduction of Sentence hearing. The Defendant filed his Motion for Reduction of Sentence the day after judgment was imposed. He then filed a notice of appeal within thirty days of the trial court's order denying his Motion for Reduction of Sentence. We believe the record reflects that the reason for the delay in filing the notice of appeal was a mistaken belief by the Defendant or his attorney that the notice of appeal should not be filed until the trial court had ruled on the motion. In the interest of justice, we waive the timely filing of the notice of appeal and address the Defendant's appeal on the merits.

## II

The Defendant argues that the trial court erred in imposing split confinement, rather than full probation. The State argues that the record supports the trial court's sentencing determination. We agree with the State.

Appellate review of misdemeanor sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to section 40-35-401(d) note, the burden is now on the appealing party to show that the sentence is improper.

When determining if confinement is appropriate, the trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. T.C.A. § 40-35-103(1)(A)-(C) (2006). The trial court may also consider a defendant's

potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. §§ 40-35-103(5) (2006), -210(b)(5) (2006); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4).

In the present case, the trial court relied on the Defendant's extensive criminal history and his repeated failures on probation in finding that confinement was warranted. The court's findings demonstrate that confinement was necessary to protect society by restraining a Defendant who had a long history of criminal conduct and that measures less restrictive than confinement had proven unsuccessful. See T.C.A. § 40-35-103(1)(A), (C). The court was likewise concerned with the Defendant's prospects for rehabilitation considering the many past opportunities he had been given. See id. §§ 40-35-103(5). Although there was proof that the Defendant had begun the rehabilitation process since committing these offenses, there was also abundant proof of the Defendant's criminal record and past failures on probation that support the trial court's determinations. The Defendant has failed to carry his burden of demonstrating that the trial court erred in imposing split confinement, rather than full probation.

### III

Finally, we consider the Defendant's claim that the trial court erred in denying his Motion to Reconsider Sentence. In his brief, the Defendant alleged trial court error in his statement of the issue, but his argument failed to address this court's standard of review or to raise specific allegations of trial court error. The State likewise did not address the issue. We hold that the trial court did not err in denying the motion.

Tennessee Rule of Criminal Procedure 35(a) permits a defendant to file a motion to reduce his sentence within 120 days of sentence imposition or probation revocation. Rule 35 permits sentence modification where it is proper in the interest of justice. State v. Hodges, 815 S.W.2d 151, 154 (Tenn. 1991). On appeal of a trial court's denial of a motion for sentence reduction, the standard of review is abuse of discretion. State v. Ruiz, 204 S.W.3d 772, 777 (Tenn. 2006); State v. Irick, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993).

In the present case, the Defendant presented evidence at the hearing on the motion that he had been in compliance with the terms of probation for two months since his sentences had been imposed. He also introduced proof of his family obligations and his compliance with bond supervision, although that evidence was presented at the sentencing hearing and considered by the trial court at that time. In denying the motion, the trial court found that in view of the Defendant's extensive criminal record and past inability to perform satisfactorily on probation, the Defendant had been given a fair sentence. The court stated that in its

original sentencing determination, it had taken into account the Defendant's recent attempt to reform himself when it sentenced the Defendant to only six months' confinement, rather than full confinement. Given the Defendant's abysmal history of criminal conduct over many years and failure to comply with probation, the interest of justice did not compel modification of the sentence based upon the Defendant's very recent ability to comply with the terms of probation. The trial court did not abuse its discretion in denying the motion.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE